Thank you. May it please the court, Sol Rubino is appearing for Michelle Horner, who is the personal representative of the estate of Gary Horner. With the court's permission, I would like to be able to use a model of the name for illustration purposes. I did show it to counsel beforehand and they do not object. Counsel, just for the record, has Ms. Horner officially been appointed as the personal representative for the purpose of pursuing these proceedings? Yes, and it has been an order from this court. The purpose of this appeal is to seek a remand to the administrative law judge because he did not discuss the evidence that Mr. Horner presented from Dr. Vesely, that the femur fracture linking the right leg caused lurching to the right, which caused the symptoms in the knee. And that would substantially affect the date of injury and the responsibility of the employer in this case. There are several facts that are undisputed in the record and the evidence supports. And the first is that Gary Horner, as late as 2005, or I should say as early as 2005, two years before this injury, had problems with his right knee and had what the doctors referred to as bone-on-bone in the knee. And this is a knee joint. The bone on top is the thigh bone or the femur. It's the largest bone in our bodies. And the bone underneath is called the tibia. It's the shin bone and it's the second largest bone in the body. And the two bones come together at the knee joint. And there's this cartilage that we're all born with on top that provides a casing or protection for the bone itself. And when the doctors referred to bone-on-bone, there was essentially no spacing, so that whenever Mr. Horner applied substantial weight on that joint, the bones would be rubbing against each other. And this basically justified medically a total knee replacement whenever he felt the symptoms were significant enough. Another issue, factual question, is on September 18 of 2007, Mr. Horner fell on a bicycle as part of his job when he was leaving work, and he fractured the femur in several places. And this was a very serious injury. He did not fracture the joint in the bone in the knee. It was in the femur. And in order to fix this, the doctor actually drilled a hole through the femur and put a rod through the femur. And it was most of the length of the distance of the femur in order to hold it. He was in the hospital five days, and the rod did not go into the knee joint. And it didn't really affect the knee joint at all in terms of the mechanics of the knee joint. So, counsel, my understanding of the issue that is before us, we pretty well know the facts of the case, but the decision for us is whether or not substantial evidence supports the ALJ's decision that the injury at issue was aggravated by work activities. And so why is there not substantial evidence in the record to support that determination? Well, there is substantial evidence to support the work activities. What the judge did is first he spent a substantial part of his opinion discussing the timeliness of the issue, which he resolved in favor of the claimant. Then he discussed whether the claimant proved to prima facie case. In other words, did he show that work activities worsened the knee? And he said the claimant did. And then from there on, he dropped the claimant's contentions and went to responsibility. He said, well, signal, the second carrier says this, and AIG, the first carrier, says this. He discussed them. So what should he have done? Your view is that he should have discussed the rod and the extent to which the rod worsened the injury? No. Our contention was that the fractured femur weakened the knee, weakened the leg, and this caused Mr. Horner, when he went back to work in April seven months later, to start lurching to the right. And Dr. Nestle felt that's what caused the increased symptoms. Lurching to the right? Lurching to the right. Okay. So he's working his feet or the knee joint to put more weight on the right side. Is that the argument you made before the ALJ that the lurching to the right caused the aggravation? Yes, we did. And that's based on Dr. Vesely's two reports. I can give you the ER sites if you want. But the ALJ, right, who relied on the report of Dr. Wells? They relied on the report of Dr. Wells, but he never discussed the report of Dr. Vesely or the contention. Does he have to discuss everything in the record? He has to discuss the conflicting evidence. Counsel, on page 14 of the opinion, of the ALJ opinion, he said, Signal relies on Dr. Vesely, but the doctor never said that the rod was interfering with the alignment of Clampman's existing knee. That's correct, and we never contended that it interfered with the knee. As I explained, the rod did not go down to the knee. It did not change the joint, the bony formation in the joint. What it did is the fracture weakened the knee and caused Gary Horner to walk differently. And that's what Dr. Vesely stated in his opinion. And the judge never discussed that. He discussed two things. He said, Signal contends it affected the alignment. We never contended that, and there was no medical evidence to support that. The judge was correct in that. Where is your brief before the ALJ in the record? I don't think I put the brief before the ALJ in the record, but I know we contended that, and I did put the brief before the benefits review board where I contended that in the excerpts. Where is that in the record? Give me a second on that. Well, you don't want to waste your time because your time is sticking, so you might want to give me that on rebuttal. It's in the pages 33 through 39. It's in there. And I also had excerpts from the closing argument before the ALJ on page 40. And the benefits review board, for some reason, never discussed this issue, this conflicting evidence, except they mentioned it in a footnote on page ER8. But they never discussed the contention and the conflicting evidence from Dr. Vesely that it was the fractured finger that caused the lurching to the right and caused the problems. There was two legal issues that pertain to this case. Neither one is in dispute. The first is that the Administrative Practices Act applies to the Longshore Harbor Workers Compensation Act. And secondly is that in order for an opinion to have substantial evidence in the record as a whole, the ALJ has to discuss the conflicting evidence, weigh the evidence, and then make a decision based on the conflicting evidence. And I quoted from the U.S. Supreme Court case that's been cited numerous times, Universal Camera Corp. versus NLRB, where the court said, and this is on page 18 of the brief, where the court said, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight. And that was a 1951 decision. And if the ALJ doesn't do that, then the court has to remand, as the Supreme Court did in the Universal Camera case. The judge has to consider that. I don't have anything else to add unless the court has some additional questions, which I'd be glad, of course, to answer. Any questions, Judge Cole? No questions here. All right. You may say your time for rebuttal. Thank you. Good morning, counsel. Good morning. My name is Stephen Breskin. I'm appearing on behalf of AIG. The issue has increased my client's responsibility. I believe the petitioner is trying to frame this issue as an error of law, but I don't think the court possibly correctly pointed out that this is substantial evidence. We contend that contrary to the petitioner's assertion, Judge Berlin adequately addressed this Altered Gate theory. Excerpts of records 17 through 21 pretty clearly detail his discussion of the Altered Gate. It begins with his discussion of January 2005 report from Dr. Albrecht. At that time, which was two years prior to the 2007 injury, he noted a various thrust, which I think is a fancy word for the type of bullying. So he starts with that baseline, then he proceeds to evaluate the evidence from the other doctors involved in the case, including Dr. Bessley and Dr. Wells, also addresses some testimony from Klayman in which he describes his knee symptoms not really getting any better or worse once the rod was inserted into the femur. But I think the real focus for the court should be excerpts of records 20 and 21. That's where Judge Berlin weighs the consecutive opinions of Dr. Bessley and Dr. Wells. Focusing on Dr. Bessley, initially he, in his opening report, suggested that there was this lurching to the right that may have caused the increased knee symptoms. But, and this is critical, in his clarifying report, he says, well, wait a minute, I don't have any prior medical records to know what his symptoms were before or what his gait was like before. And Judge Berlin focused on that and said, well, you know, Dr. Bessley's report, when compared to Dr. Wells' opinion, isn't very strong, and that's why he relied on Dr. Wells' opinion. So any argument or assertion that Judge Berlin has simply ignored the alter-gait theory, it's not supported by the record. Again, excerpts of records 20 and 21, those are the pages of Judge Berlin's decision, where he holds in on that issue, adequately addresses it, and there's substantial evidence to support his finding that responsibility rests with Sigmund. And that's all I have for now. I don't know if we can't waste any time. Yes. Good morning. Good morning. I'm Robert Babcock. I represent Signal Mutual, which is the second insurance carrier involved in this particular matter. Same employer, coverage just changed. And I'm assuming that our challenges to the timeliness of Mr. Horner's own claim and the delays in getting Ms. Horner established as the proper representative are kind of off the table. And with that, my comments will be very short. We have joined in our brief in Mr. Rabinowitz's request to shift responsibility back to Chartis, the earlier carrier. We do that because, after all, it's equally as we surely want to be on the winning side. But I've got to tell you, we would never have appealed the decision of imposing responsibility. And the reason for that is that there's almost nothing, in terms of money, that issues in this particular case. Mr. Rabinowitz did not challenge the critical ruling by both the ALJ and the board that Mr. Horner was not entitled to temporary total disability compensation following his voluntary retirement. That's not raised in the briefs. It's not argued this morning. It's simply not challenged. And the result of that is that, even if Mr. Rabinowitz succeeds with his effort to shift responsibility back to Chartis, and thereby has increased average weekly wage, his client, his state, will get nothing here or on remand in this proceeding. And even if he ultimately obtains an award for his scheduled disability, an award measured by the impairment to the leg, following this proposed knee replacement surgery, the amount assigned between that surgery and his untimely death is so short that the accrued amounts payable to the estate are minimal. Basically, the estate gets nothing out of this appeal. Well, but that's not what we're called upon to decide at this point. From our perspective, it explains why we would not have appealed the old responsibility finding. In any event, it is the estate. Mr. Horner is not a statutory survivor. She can't ultimately recover any funds on her own. And the award was small. Our position is that, sure, we think that when bone-on-bone conditions are reached and the responsibility under the Metropolitan State of New York price cases and the progeny should go back to find that first employer or that first carrier liable and supported. But that's not the law now as we read it, and we wouldn't have appealed on that basis on our side. All right. Thank you, Cassie. Mr. Bottle. I have a couple of things to say. As a court probably can assume money is always an issue in these cases, and there is a claim, a pending claim, for permanent and partial disability A, based on a schedule, and Michelle Horner would be entitled to the value of that as a personal representative of the estate and as the heir of the estate. B, I don't think that's something that would be sorted out in a different court, right? That's correct. It's not before this court. The other thing the court asked about whether I raised this issue, and I did raise this issue. It was on page ER36. I raised it before the board, and it was also before the ALJ. The part of Judge Berlin's decision is on page 14 of his decision, which is ER27, and in that situation he said there were two theories in this case. One is that the rod interfered with the alignment of the knee, and as I explained that the rod never got into the knee. It was the pain from the femur fracture that Dr. Bessely felt affected his gait and caused him to lurch to the right. And the second argument he said was the timing, and he said that it was seven months before the knee started bothering him, and therefore he said that the timing alone does not prove anything, and there was no medical evidence to support that. But there was medical evidence to support that the femur caused a lurching to the right, which he never discussed at all. In ER21, page 8, I think this is the board's decision on the ALJ decision. This is the administrative law judge's decision on page 8 of that decision, ER21. The second paragraph, first and second paragraph, here he talks about Dr. Bessely and the slight lurch to the right. He says that, but he never discusses whether that evidence, he never weighs that evidence against the evidence from Dr. Wells. He mentions it, and then he doesn't discuss it at all in his opinion, and what he has to do is take that evidence and the evidence on the other side, the conflicting evidence, weigh them, make a decision. And if he doesn't do that, he doesn't comply with the substantial evidence and the record as a whole requirement. Well, on page 12 of decision ER25, he talks about Dr. Bessely's testimony and the aggravation of the degenerative knee condition on the second paragraph. So, I mean, it's clearly in his mind in terms of deciding the issues. Well, he talks about Dr. Bessely said that without an x-ray beforehand, I can't tell whether the pathological condition, whether the spacing got worse, the bone-on-bone got worse. But what Dr. Bessely said is irrespective of that, he believes that the femur fracture caused Mr. Warner to lurch to the right, and that was the evidence that we relied on to hold that AIG was the responsible carrier and not signaling the judge. He mentioned it, but he never discussed it. He never said, you know, this is why this isn't valid or this is why this is valid. How about on page 13 where he directly discusses Dr. Wales and Dr. Bessely back-to-back? He does discuss Dr. Bessely's, some of Dr. Bessely's statements, but not the statement, the key statement that lurching to the right caused the aggravation of the symptom. But it's apparent that he's comparing the two doctors in what their opinions were, and why isn't that accurate? Because he doesn't discuss the evidence from Dr. Bessely about the lurching to the right. He only discusses other things like pathologically the knee didn't worsen or he says it doesn't meet the state legal standard to refute a compensable injury. But he never mentions, other than that page 8 of his opinion, which I think was ER 21, I think you mentioned, he never says, this is how I feel, this is my opinion, and this is the evidence against that. He never does that. He doesn't have to use specific words. There are no magic words that have to be used in order to reflect that all of the evidence has been considered. No, he doesn't have to use any magic words, but he has to at least discuss the evidence and say, I'm weighing this against this, which he didn't do. I mean, he just can't go through the evidence and then have a discussion on the evidence and leave out the conflicting evidence that doesn't comply with the universal camera case. I don't have anything else to add. I think looking through the record, the judge has never discussed that opinion, and it doesn't comply with substantial evidence in the record as a whole, which is what the requirement is in the law. All right. Thank you, counsel. Thank you. Thank you to both counsel. Is this argument, as of yet, a decision by the court? The final case on calendar for argument today is United States v. Cornelius.
judges: Tashima, Gould, Rawlinson